UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-22066-CIV-GOLD/MCALILEY

FOREIGN IMPORTED PRODUCTIONS
AND PUBLISHING, INC.,

      Plaintiff,

v.

GRUPO INDUSTRIAL HOTELERO, S.A,
ET AL.,

      Defendants.
_____/

<u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DE 17]</u>

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss [DE 17], filed on August 10, 2007.  Plaintiff Foreign Imported Productions Publishing, Inc. ("FIPP") filed its Complaint [DE 1] against Defendants Grupo Industrial Hotelero d/b/a Coco Bongo ("Grupo"), Robert Noble, Sr. ("Noble"), and Isaac Halabe ("Halabe") (collectively "Defendants") for injunctive relief and damages incurred in connection with Defendants' alleged copyright infringement.  Defendants filed a Motion to Dismiss and Motion to Strike [DE 17] ("Motion") on July 22, 2008, seeking to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, and to strike certain matter from the Complaint.  Plaintiff filed a Response to the Motion [DE 24] ("Response") on August 20, 2008, and Defendants filed a Reply to the Response [DE 31] ("Reply") on September 15, 2008.  After careful consideration of the Motion and related pleadings, the case file, and relevant case law, I conclude that this court has subject matter jurisdiction and personal jurisdiction, and that

1

Plaintiff has stated a cause of action.  I therefore deny Defendants' Motion to Dismiss.  I also deny Defendants' Motion to Strike.

I.      Factual Allegations and Supporting Materials[1]

      A.      Parties and Background

In considering Defendants' Motion to Dismiss, I accept the facts as alleged in the Complaint and exhibits attached thereto as true.   Accordingly, Plaintiff FIPP is a corporation duly organized and existing under the laws of the State of Florida, with its principal place of business in Florida.   (Complaint, DE 1, ¶ 6).  Defendant Grupo, a Mexican corporation, owns and manages the Coco Bongo nightclub in Cancun, Mexico. (*Id.* at ¶ 7).   Defendant Noble, an individual residing in Cancun, Mexico, owns and manages the Coco Bongo nightclub and is the majority shareholder of Defendant Grupo. (*Id.* at ¶ 8).   Defendant Halabe, also an individual residing in Cancun, Mexico, is the General Director/Chief Operating Officer of Grupo and manages the Coco Bongo Nightclub.  (*Id.* at ¶ 9).

FIPP is a publisher of Latin music and is the copyright owner or licensee of exclusive rights to the musical composition entitled "Let's Get Loud."  (*Id.* at ¶¶ 10, 14).  "Let's Get Loud" was co-written by Gloria Estefan and appeared on Jennifer Lopez's 1999 debut album, "On the 6."  (*Id.* at ¶¶ 12-13).   The Coco Bongo nightclub in Cancun, Mexico puts on a nightly show which includes celebrity impersonators lip-syncing and dancing to

---

[1]"When considering a motion to dismiss, the court may consider the complaint and all exhibits attached thereto."  *Rance v. Rocksolid Granit USA,* Inc., 2008 WL 2751291, at *1 (11th Cir. July 16, 2008) (citing *Thaeter v. Palm Beach County Sheriff's Office,* 449 F3d 1342, 1352 (11th Cir.2006)).  Plaintiff FIPP has attached to the complaint ten exhibits, including screenshots from the Coco Bongo nightclub, Yahoo, and Mexicoquest websites, evidence of copyright registration for the sound recording of "Let's Get Loud," and a cease and desist letter.  I may consider all of these exhibits, as well as the complaint, in my assessment of the motion to dismiss.

popular songs while music videos and movie clips of famous celebrities, including Jennifer

Lopez, Elvis Presley, Michael Jackson, and Britney Spears, are played. (*Id.* at ¶¶ 15-16).

      B.    <u>Promoting the Coco Bongo Nightclub</u>

To promote their nightclub, Defendants use the images and likenesses of celebrities

(*Id.* at ¶ 17).   Defendants significantly target tourists from the United States in their

promotional efforts, and more than half of Coco Bongo's customers are tourists from the

United States.  (*Id.*).  Defendants promote the nightclub in the United States through the

Coco Bongo official website (www.cocobongo.com.mx ("Coco Bongo website")), travel

agencies, advertisements, and trade shows.  (*Id.* at ¶¶ 19-23).

Through the website, users can engage in the following interactive features: 1)

register to become an online member; 2) download wallpaper containing unauthorized

images of celebrities; 3) rate the nightclub and post photographs and reviews; 4) chat live

with other users on the website; 5) view photographs of acts from the nightly shows, rate

the acts, and view other users' ratings; 6) view almost 50,000 files in 480 albums of

photographs taken at the Coco Bongo nightclub or a Coco Bongo-sponsored event, rate

the photographs, view other users' ratings, add photographs to a "favorites" list; 7) send

an e-card of a photograph which is sent from the Coco Bongo website server; and 8)

reserve tickets for the Coco Bongo nightclub.  (*Id.* at ¶¶ 19-20).  Defendants Noble and

Halabe maintain the Coco Bongo website and have control over the content placed on the

website.  (*Id.*).

In addition to the website, Defendants advertise and promote the Coco Bongo

nightclub to tourists from the United States through business relationships with

travel/tourist agencies and tour operators in Florida and throughout the United States.  (*Id.* at ¶ 21).  The agencies and operators sell admission passes and distribute coupons for discounted admission to the Coco Bongo nightclub to tourists from the United States, including college students.  (*Id.*).  Defendants also promote and advertise the nightclub in the United States by distributing advertisements and promotional materials through U.S. magazines and travel publications, and on U.S. companies' websites and college campuses.  (*Id.* at ¶ 22).  Finally, throughout the year, Defendants attend trade shows in Florida and throughout the United States.  (*Id.* at ¶ 23).

C.     Infringing Action

According to the Plaintiff, Defendants have knowingly and without authorization, permission, or consent of FIPP, distributed video advertisements (the "Infringing Video") on the Coco Bongo website, and on various other popular websites.  (*Id.* at ¶ 24).  The Infringing Video contains the sound recording of Jennifer Lopez performing "Let's Get Loud," the musical composition owned by FIPP.  (*Id.*).  Through the Coco Bongo website and other websites, including www.youtube.com, www.yahoo.com, and www.mexicoquest.com, Defendants have also reproduced, distributed, and caused to be reproduced and distributed, the Infringing Video through interstate commerce (including through Florida) and worldwide.  (*Id.* at ¶ 25).

On March 29, 2007, FIPP sent a letter to Defendants Noble and Halabe, demanding Noble and Halabe cease and desist use of the "Let's Get Loud" composition and requesting specific information so that FIPP could determine appropriate compensation for the unauthorized use of "Let's Get Loud." (*Id.* at ¶ 26).  Defendants Noble and Halabe did

not respond to the cease and desist letter, and FIPP filed the present action.  (*Id.*).

II.    Standard of Review

    In determining whether to grant a motion to dismiss, the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)*; Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).  Where a motion to dismiss is not an adjudication on the merits, a judge may make factual findings.  *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  For instance, it is well-established that a judge may make factual findings necessary to motions to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, ineffective service of process, and improper venue.  *Id*.  It is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record.  *See id*.

    As for pleading requirements, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, -- U.S. --, --,  127 S. Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'"  *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir. 2007) *(*quoting *Twombly*, 127 S.Ct. at 1965).  "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level."

*Watts*, 495 F.3d at 1295 (citing *Twombly*, 127 S. Ct. at 1965) (internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have "nudged [its] claims across the line from conceivable to plausible." *Bell Atl.*, 127 S. Ct. at 1974.  The rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*  It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." *Id.*

II.   Discussion

    A.   Subject Matter Jurisdiction

Title 28, U.S.C., § 1338 gives the district courts original jurisdiction over civil actions arising under federal copyright law.  Federal copyright law has no extraterritorial effect, and therefore "it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action." *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004).[2]  Stated another way, district courts do not have subject matter jurisdiction over infringing acts that took place

---

[2]I rely on Palmer because it is the most recent ruling from the Eleventh Circuit evaluating the extraterritorial application of the Copyright Act and assessing jurisdiction accordingly.  The Federal Circuit points out in *LiteCubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353 (Fed.Cir. 2008) that the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) may prompt the Eleventh Circuit to take a different approach to evaluating extraterritorial application of the copyright act as a jurisdictional threshold question.  In *Arbaugh*, the Supreme Court cautioned that courts have at times erroneously termed an element of a claim a jurisdictional limitation. *Id.* at 511.  To prevent such mischaracterizations, the *Arbaugh* court issued a bright line rule: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." *LiteCubes*, 523 F.3d at 1362 (quoting *Arbaugh*, 546 U.S. at 516).  Applying the *Arbaugh* rule, the Federal Circuit in *LiteCubes* declined to rule on the extraterritorial reach of the plaintiff's claim as a jurisdictional issue, and instead held that the issue is properly treated as an element of the claim which must be proven before relief can be granted. *Id.* at 1368.

"wholly outside" the United States or "entirely overseas." *See Subafilm, Ind. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1096-97 (9th Cir. 1994).

Here, Defendants contend this court lacks subject matter jurisdiction because Plaintiff has not alleged that Defendants copied protected content in the United States or that actionable infringement occurred within the United States.  Defendants also argue that the Coco Bongo website is outside the territorial reach of the Copyright Act because it is maintained and controlled in Mexico, by Mexican citizens, and the Complaint makes no allegations that the Coco Bongo website is controlled or maintained in the United States or owned by a United States citizen or entity.[3]  I disagree with the Defendants because, as stated below, Plaintiff has adequately pled infringing acts in the United States.

Plaintiff has alleged several infringing acts occurring in the United States, namely that 1) through the Coco Bongo website and other popular websites, Defendants distributed the Infringing Video in the United States (Complaint, DE 1, ¶ 24); and 2) Defendants reproduced, distributed, and caused to be reproduced and distributed the Infringing Video through interstate commerce ( including Florida) on the Coco Bongo website, and on other popular websites,  including www.youtube.com. www.yahoo.com, and www.mexicoquest.com (*Id.* at ¶ 25).  Defendants need not have copied the Infringing Video within the United States to constitute infringement in the United States.  *See Palmer*,

---

[3]A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). A facial attack on the complaint requires the court merely to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. *Id.* "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* Defendants have made only a facial attack on the complaint; therefore I must take the allegations in the Complaint as true for purposes of deciding whether I have subject matter jurisdiction over this matter.

1254 Fed.3d at 1258 (finding subject matter jurisdiction where copyrighted material was copied in France but 25 copies were imported into the United States for distribution). Although the design, maintenance, and ownership of the Coco Bongo website may be outside the United States, acts of infringement are committed within the United States when United States citizens view the copyrighted material on the Coco Bongo website. *See Twentieth Century Fox Film Corporation v. IcraveTV*, Nos. 00-121 and 00-120, 2000 WL 255989 (W.D.Pa. February 8, 2000) ("Subject matter jurisdiction exists, because although the streaming of the plaintiffs' programming originated in Canada, acts of infringement were committed within the Unites states when United States citizens received and viewed defendants' streaming of copyrighted materials."); *see also Los Angeles News v. Conus Com. Co. Ltd. Ptnrshp.*, 969 F.Supp.579, 583 (C.D.Cal. 1997) (finding subject matter jurisdiction and "direct acts of infringement" where defendant broadcasted copyrighted programming from Canada, but such programming was viewed on American television sets). In sum, I conclude that the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and that the Defendant has not raised a sufficient factual attack at this juncture.

      B.    <u>Personal Jurisdiction</u>

           1.    <u>Universe of Facts and Standard of Review</u>

On a motion to dismiss for lack of personal jurisdiction, and where the district court does not hold an evidentiary hearing, the burden is on the plaintiff to establish a prima facie case of personal jurisdiction over the defendant, which means plaintiff must present enough evidence to withstand a motion for directed verdict. *Consol. Dev. Corp. V. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). "A directed verdict is only proper when the

8

facts and inferences so overwhelmingly favor the verdict that no reasonable juror could reach a contrary decision." *Butler v. Greif Bros. Service Corp.,* 231 Fed.Appx. 854, 856 (11th Cir. 2007) (citing *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1215 (11th Cir.2004)). In evaluating whether plaintiff has established a prima facie case of personal jurisdiction, the court must accept the allegations in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits or evidence. *Consol. Dev.*, 216 F.3d at 1291.

In their Motion to Dismiss, Defendants challenge this court's personal jurisdiction over Defendants Halabe and Grupo, but Defendants do not present any affidavits or evidence to support this jurisdictional challenge. I therefore take all allegations in the Plaintiff's Complaint and exhibits attached thereto as true in construing Defendants' Motion.[4] Defendants do not challenge the court's jurisdiction over Defendant Noble.

### 2.   Personal Jurisdiction in Florida

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts. First, I determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). Second, I examine whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend "traditional notions of fair play and

---

[4]In their Reply, Defendants agree that their Motion was "directed to the insufficiency of Plaintiff's pleading which is evident from the face of the Complaint" and "that for purposes of a Motion to Dismiss under Rule 12, Fed.R.Civ.P. all well-pleaded allegations are taken as true." (Reply, DE 31, p. 2).

substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  In other words, to satisfy constitutional concerns, the non-resident defendant should reasonably expect to be haled into court in the forum.  *Burger King Corp. V. Rudzeqicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### a.   Florida Long Arm Statute

Plaintiff argues that specific jurisdiction lies in Section 48.193(1)(b) of Florida's long-arm statute, which permits jurisdiction over a person, whether or not a citizen or resident of Florida, who commits a tortious act within the state.[5]  Fla.Stat. § 48.193(1)(b).  Copyright infringement is a tortious act within the meaning of § 48.193(1)(b).  *Santilli v. Cardone*, 2008 WL 2790242, at *3 (M.D.Fla. July 18, 2008); *see also Cable/Home Commc'n v. Network Prods.*, 902 F.2d 829, 856 (quoting *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1109 (5th Cir.1976), "'[T]he breach of a common law copyright subjects the wrongdoer to liability in tort' within the reach of the Florida long-arm statute.").  The Florida long-arm statute is not limited to an act in Florida causing injury in Florida, but includes "the situation in which a foreign tortious act causes injury within the forum."  *Cable/Home Commc'n*, 902 F.2d at 856 (quoting *Rebozo v. Washington Post Co.*, 515 F.2d 1208, 1212 (5th Cir.1975)).  The Florida Supreme Court has made explicit that a defendant's physical presence is not required to commit a tortious act in Florida.  *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002).  If copyright infringement occurs on a

[5]In the Complaint, Plaintiff pled as an alternative basis for jurisdiction Fla.Stat. § 48.193(1)(f)(1), but Plaintiff withdrew this basis in its Response.  Also, Defendants incorrectly contend in their Reply (DE 31, p.5) that Plaintiff "admits that it has not pled § 48.193(1)(b) of Florida's long-arm statute" as a basis of jurisdiction.  First, Plaintiff stated in its Response that it had not pled § 48.193(2) as a basis of jurisdiction. (Response, DE 24, p.8, FN 4).  Second, as referenced by Defendants in their Motion to Dismiss, DE 17, p. 11, Plaintiff pled § 48.193(1)(b) in the Complaint.  (Complaint, DE 1, ¶ 4 ("The Court has jurisdiction over Defendants pursuant to Florida Statutes § 48.193(1)(b) . . . .").)

website that is accessible in Florida, § 48.193(1)(b) is met even if the website was created outside of Florida.   *See Licciardello v. Lovelady,* 2008 WL 4531668, at *2 (11th Cir. October 10, 2008) (referring to trademark infringement on a website created in Tennessee, "[I]n this case the alleged infringement clearly . . . occurred in Florida by virtue of the website's accessibility in Florida.").

Plaintiff alleges that the Coco Bongo website displays the Infringing Video and is reproduced and distributed through interstate commerce, including Florida.  (Complaint, DE 1, ¶¶ 24-25).  Because Plaintiff has alleged that the website is the site of the copyright infringement and is accessible in Florida, on a motion to dismiss, Plaintiff's allegations are sufficient to invoke § 48.193(1)(b) of the Florida long-arm statute.[6]  Having determined that the Florida long-arm statute authorizes jurisdiction over Defendants, I address whether the due process clause of the United States Constitution permits the long-arm statute to be employed in this case.

b.   Due Process

"[T]he instruction of *International Shoe Co.* and its progeny is that the determination of whether or not the assumption of personal jurisdiction over a nonresident defendant conforms with due process, requires a dual analysis: first, we must ascertain if defendants-appellants have established 'minimum contacts' with Florida, the forum state;

---

[6]To support the assertion of jurisdiction under § 48.193(1)(b), Plaintiff cites the Florida Supreme Court's ruling in *Wendt* that a nonresident defendant's telephonic, electronic, or written communications into Florida can constitute a tortious act in Florida, so long as the cause of action must arises from the communication.  822 So.2d at 1260.  Defendants argue that the Coco Bongo website is not a direct communication within the meaning of *Wendt* because "Defendant Grupo uses the website for advertising, and does not directly communicate with, or specifically target or consider Florida residents. "  (Reply, DE 31, p. 5).  I need not determine whether Defendants' conduct met the *Wendt* criteria because the Eleventh Circuit has made clear that a defendant's tortious conduct on a website accessible in Florida subjects the defendant to § 48.193(1)(b).  *See Licciardello,* 2008 WL 4531668, at *2.

second, we must decide if the exercise of personal jurisdiction over nonresident defendants . . . in Florida would offend "traditional notions of fair play and substantial justice." *Cable/Home Commc'n*, 902 F.2d at 854 (citation omitted).  This analysis varies depending on whether the personal jurisdiction asserted is specific or general.  *Consol. Dev. Corp. v. Sherritt*, 216 F.3d 1286, 1291 (11th Cir. 2000).

i.    Contacts with Florida

Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint.  *Id.*  A forum may exercise specific jurisdiction over a nonresident defendant if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).  The requirement that there be minimum contacts is grounded in fairness and assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there."  *Consol. Dev. Corp.*, 216 F.3d at 1291-92 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).  "The constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State."  *Burger King v. Rudzewicz*, 471 U.S. at 473-74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310 at 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."  *Id*. (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).  "Intentional torts are such acts, and may support the

12

exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello,* 2008 WL 4531668, at *2 (citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

The Eleventh Circuit has adopted a three-part test to decide whether the minimum contacts requirement for purposes of specific jurisdiction has been met.  First, the contacts must be related to the plaintiff's cause of action.  Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.  *Posner v. Essex Ins. Co. Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999).

As to the first prong, Plaintiff alleges that Defendants have advertising contacts with Florida through the Coco Bongo and third-party websites, tourist agencies, and travel trade shows.[7]  Plaintiff also alleges that distribution of the Infringing Video on the Coco Bongo and third-party websites is the source of the cause of action.  Because the website contacts are related to the cause of action, Defendants' website contacts meet the first prong of the test.

To meet the second prong,  Defendants must have purposefully availed themselves of the privilege of conducting activities within Florida.  Plaintiff contends that, under the sliding scale analysis of *Zippo Mfg. Co. V. Zippo Dot Com*, 952 F.Supp. 1119 (W.D.Pa. 1997) , Defendants' Coco Bongo website is an active or interactive website that subjects

---

[7]In the Complaint, Plaintiff alleges that Defendants distribute advertisements and promotional materials through U.S. magazines and travel publications, and on U.S. companies' websites and college campuses, but Plaintiff does not allege that these advertisements occur in Florida specifically.

Defendants to jurisdiction in Florida.[8]  Defendants rebut that the Coco Bongo website is a passive website and thus does not warrant personal jurisdiction.

The Eleventh Circuit has not addressed the *Zippo* analysis, but a number of sister circuits have either adopted or followed the standard established in *Zippo*.  *See, e.g. Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir.2003) (describing *Zippo* as a "seminal authority regarding personal jurisdiction based upon operation of an Internet web site" and applying principles articulated in *Zippo*); *ALS Scan. Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002) ("[W]e adopt today the model developed in *Zippo*." (internal citation omitted)); *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) ("We find that the reasoning of Zippo is persuasive and adopt it in this Circuit."); *see Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 510 (D.C.Cir. 2002) (concluding, in an analysis of general jurisdiction, that a website that allowed users to open brokerage accounts, transmit funds to the accounts, use accounts to buy and sell securities, to borrow on margin, and to pay brokerage commissions and interest was not "passive"); *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (holding a website that "offer[ed] information" about defendant's services and "solicit[ed] business from 'all over the planet'" was a passive informational site); *see also Estate of Charles E. Fraser v. Smith*, 2007 WL 5007084, at *8 (S.D.Fla. November 13, 2007) (referring to website contacts and jurisdiction, "While the law may still be unsettled in the Eleventh Circuit. . . ."); *Hartoy Incorporated v. Thompson*, No-02-80454, 2003 WL

---

[8]While Plaintiff asserts, and Defendants do not contest, that the Infringing Video was placed on third-party websites, neither party discusses the interactive quality or the jurisdictional effect of these third-party websites. Accordingly, I evaluate only the Coco Bongo website under the *Zippo* framework and its progeny.

21468079, at *4 (S.D.Fla. 2003) *("*A number of court of appeals have either adopted or followed the standard established in *Zippo Mfg. Co.,* focusing on the distinction between 'passive' and 'active' websites.")*.

Moreover, several Florida District Courts of Appeal have endorsed the *Zippo* framework, drawing a distinction between passive websites and interactive websites in assessing jurisdiction. *Renaissance Health Pub.,* 982 So.2d at 742 (citing *Zippo* and stating that an interactive website may support a finding of personal jurisdiction in the state); *Westwind Limousine, Inc. v. Shorter*, 932 So.2d 571, 575 n. 7 (Fla. 5th DCA 2006) (recognizing the distinction between a passive website and an active website designed to market products in Florida).   The reach of the Florida long-arm statute is a question of Florida law, and federal courts are required to construe the statute as would the Florida Supreme Court.  *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002).   "Absent some indication that the Florida Supreme Court would hold otherwise, federal courts are bound to adhere to decisions of its intermediate courts." *Id.*  I therefore apply the *Zippo* framework to my analysis of Defendants' website.

The *Zippo* court established a "sliding scale" for defining when electronic contacts are sufficient to subject a defendant to jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. . . . . The middle ground is occupied by interactive Web sites where

15

a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F.Supp. at 1124. In order to determine whether jurisdiction can be exerted over Defendants in this case, I turn to the nature of Defendants' Coco Bongo website as identified in the Complaint and exhibits thereto.

At this juncture, I agree with Plaintiff that the Coco Bongo website is an interactive website because a user of the Coco Bongo website "can exchange information with the host computer." *Zippo*, 952 F.Supp. at 1124. Plaintiff has alleged that users of the Coco Bongo website may engage in numerous interactive activities. Users may reserve tickets to the Coco Bongo nightclub, register to become an online member (whereby users receive an email confirming registration), download wallpaper and photographs, upload photographs, post reviews, rate the nightclub and acts from nightly shows, chat live with other users on the website, send e-cards, and add photographs to a "favorites" list. (Complaint, DE 1, ¶¶ 19-20, Exhibits B-H). Such actions require the user of the website to "exchange information with a host computer," rendering the Coco Bongo website an interactive website. *See Computeruser.com, Inc. v. Tech. Publ'ns, LLC*, 2002 WL 1634119 (D.Minn. July 20, 2002) (holding that website that permitted users to register for a competition, contained a message board, and offered free email accounts was interactive); *cf. Miller v. Berman*, 289 F.Supp.2d 1327 (holding that website that posted information and allowed users to email company representatives is passive and does not confer general jurisdiction on defendant); *Westwind Limousine*, 932 So.2d 571 (holding that website that merely provided company background was passive).

Defendants do not dispute that the Coco Bongo website contains the alleged features, but argue, citing *Miller* and *Westwind,* that because Defendants are "[m]erely posting information, photos, or videos" on the site, and because users cannot create contracts through the site, the Coco Bongo website is passive.[9]  (Reply, DE 31, pp. 7-8). In *Miller*, the website at issue made information available to those that were purchasing sailboats and was not alleged to have any interactive features.  *Miller*, 289 F.Supp.2d at 1335-36.  Similarly, in *Westwind,* the website provided company background, "stating that Westwind has been in the business of manufacturing, selling, and leasing converted limousines since the early 1980s."  *Westwind*, 932 So.2d at 574.  The *Westwind* website too was not alleged to have any interactive features.  *Id.*

In contrast to the defendants in *Miller* and *Westwind,* Defendants in the present case are not "merely posting information, photos, or videos"; Defendants purportedly have created features by which users can download wallpaper and photos, upload photos, register to become a member, receive email confirmation of registration back from the website, send e-cards, and engage in a host of other interactive activities that involve communication with a host computer.  Even though users cannot "create contracts" through the website, they can reserve tickets for the Coco Bongo nightclub.  Reserving tickets is commercial in nature and fits squarely within the *Zippo* definition of an interactive website.  *See Zippo,* 952 F.Supp. at 1124 ("The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases,

---

[9]On pages 6-7 of their Reply, Defendants incorrectly cite to the Fourteenth Amendment for certain propositions concerning passive and interactive websites.  Defendants provide other propositions, such as the block text on the bottom of page 6, without citation. This court will address only the cases cited by Defendants.

the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.").

Even though I have concluded that the Coco Bongo website is interactive, the ultimate question under the *Posner* test is whether Defendants purposefully availed themselves of the privilege of conducting activities within Florida.  *Posner* 178 F.3d at 1220; *see also Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F.Supp.2d 1082, 1091 (E.D.Mo.2001) ("While the sliding scale suggested by the court in Zippo may be a relevant factor in assessing general jurisdiction, it is not alone determinative."); *Estate of Charles E. Fraser,* 2007 WL 5007084, at *8 ("[O]ther circuits have required that for personal jurisdiction to be based on a website - even an interactive one - it must be shown that the owner of the website manifestly intended to target citizens of the forum state.").  Here I apply a "website plus" test and consider Defendants' website contacts, as well as other contacts with Florida.  *See Toys "R" Us, Inc. v. Step Two, S.A.* 318 F.3d 446, 452 (3rd Cir. 2003) ("In deciding whether to exercise jurisdiction over a cause of action arising from a defendant's operation of a web site, a court may consider the defendant's related non-Internet activities as part of the "purposeful availment" calculus."); *Heroes, Inc. v. Heroes Foundation*, 958 F.Supp. 1 (D.D.C. 1996) (considering contacts with forum through Internet home page as well as defendant's other contacts with forum in finding jurisdiction).

In *Toys "R" Us*, the Third Circuit found that defendant Step Two had not purposely availed itself of the customers of New Jersey because Step Two's website was entire in Spanish, prices for its products were in peseta or Euros, and merchandise could be shipped only to addresses within Spain.  318 F.3d at 452.  Moreover, the record did not

support a finding that Step Two knowingly conducted business with New Jersey residents, as there were only two sales to persons in the United States, and it appeared that Step Two "scarcely recognized that sales with U.S. residents had been consummated."  *Id.*

The facts of the present case are starkly different from *Toys "R" Us*.  First, according to Plaintiff, Defendants' website can be viewed in English, depicts an American flag, and portrays numerous celebrities that are popular in the Unites States.  (Complaint, DE 1, Exhibits B-H).  Furthermore, Defendants advertise and promote the Coco Bongo nightclub through travel agencies and tour operators in Florida. (*Id.* at ¶ 21).  These travel agencies and tour operators sell admission passes and distribute coupons for discounted admission to the Coco Bongo nightclub.  *Id.*  Defendants also attend travel trade shows in Florida, including the MPI Mexico Roadshow in Mexico and the WEC/World Education Congreso in Miami.  (*Id.* at ¶ 23).  Unlike the defendant in *Toys "R" Us*, Defendants in the present case appear to have purposely availed themselves of customers in Florida.

Defendants next argue that the business relationships with travel agencies and attendance at trade shows are not related to the subject website.  First, these additional contacts need not be connected to the website; the contacts need only demonstrate that Defendants purposely availed themselves of Florida.  *See Toys "R" Us* 318 F.3d at 452. Second, Plaintiffs have alleged that the travel agencies sell tickets and provide discounts to the Coco Bongo nightclub, the same nightclub which the Coco Bongo website promotes, and for which users can make a reservation on the website.  Defendants' contacts with the forum state of Florida all serve the common purpose of promoting the Coco Bongo nightclub and indicate that Defendants purposely availed themselves of Florida and its

residents.

The third and final prong of the Eleventh Circuit's test for sufficient minimum contacts to establish specific personal jurisdiction is whether the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there.  *Posner,* 178 F.3d at 1220 (11th Cir. 1999).  Defendants cite *Shamsuddin v. Vitamin Research Products*, 346 F.Supp.2d 804 (D.Md. 2004) to support their position that Defendants' contacts were not purposeful such that they would expect to be haled into court in Florida.[10]  In *Shamsuddin*, plaintiffs argued that jurisdiction was proper solely because defendant operated an interactive website through which Maryland customers could place orders.  *Id.* at 806.  The court held, "Although VRP's decision to sell its products over the Internet was a 'purposeful' one, that decision alone cannot demonstrate that VRP took actions purposefully directed toward Maryland specifically."  *Id.* at 815.

In contrast to VRP, Defendants' purposeful contacts with Florida go beyond the internet.  As explained above, Defendants apparently have made the "purposeful" decision to market and promote the Coco Bongo nightclub to Florida citizens through business relationships with Florida travel agencies, and  Defendants also made the "purposeful" decision to attend travel trade shows in Florida.  Such contacts elevate Defendants' contacts with Florida from foreseeable to deliberate, and Defendants should reasonably expect to be haled into court in Florida.[11]  *See World-Wide Volkswagen Corp. v. Woodson*,

---

[10]Specifically, Defendants cite *Shamsuddin* for the proposition that "Asserting personal jurisdiction over [the defendant] on the basis of its isolated sales and interactive website would ignore the constitutional requirement of deliberate, rather than merely foreseeable, contacts."  *Id.* at 814.

[11]Defendants also argue that if they reasonably expected litigation in Florida, they should reasonably reasonable expect litigation in any forum.  (Reply, DE 31, p. 7).  Again, Defendants ignore their non-website contacts with Florida, which render their connection to and availment of Florida greater than

444 U.S. 286, 314, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("[J]urisdiction is premised on the deliberate and purposeful actions of the defendants."). In sum, I conclude that the contacts of Defendants Halabe and Grupo with Florida satisfy the three-prong test for minimum contacts.[12, 13]

ii.    Fair Play and Substantial Justice

Having established that Defendants have constitutionally sufficient contacts with Florida, I address whether the exercise of personal jurisdiction over Defendants Halabe and Grupo comports with "traditional notions of fair play and substantial justice." In making this determination, I consider the burden on the defendant of defending the suit in Florida, Florida's interest in adjudicating the suit, and the plaintiff's interest in obtaining effective

_____

other forums.

[12]In their Reply, Defendants attack Plaintiff's use of *Noury v. Vitek Mfg. Co., Inc.*, 730 F.Supp. 1573 (S.D.Fla. 1990) to support the argument for jurisdiction. (Reply, DE 31, p. 8). Defendants argue that the contacts in *Noury* were far more substantial than the contacts of Defendants, and were characterized as "continuous and systematic." *Id.* While the contacts in *Noury* were greater than the contacts in the present case, the *Noury* court was determining general jurisdiction under § 48.193(2) of the Florida long-arm statute. *Noury*, 730 F.Supp. at 1574. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, *Consol. Dev. Corp. v. Sherritt*, 216 F.3d at 1292, and *Noury* is thus extraneous to my analysis of specific jurisdiction in Florida.

[13]The Eleventh Circuit recently found personal jurisdiction on far fewer contacts than are present here. In *Licciardello*, the Eleventh Circuit concluded that jurisdiction existed over a defendant whose sole contact with Florida was a website on which defendant allegedly infringed plaintiff's trademark. *Licciardello v.Lovelady*, 2008 WL 4531668 (11th Cir. October 10, 2008). Plaintiff Carman Licciardello, a musician and entertainer, alleged that defendant Lovelady, a personal manager for music artists, posted on the internet a website that used Licciardello's trademarked name and picture, implying that Carman endorsed Lovelady as a personal manager. *Id.* at *1. The website was created in Tennessee but was accessible in Florida. *Id.* at *2.

In concluding jurisdiction existed over Lovelady, the Eleventh Circuit stated, "In this case, Lovelady is alleged to have committed an intentional tort against Carman-using his trademarked name and his picture on a website accessible in Florida in a manner to imply Carman's endorsement of Lovelady and his products. The use was not negligent, but intentional. . . .The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over Lovelady because his intentional conduct in his state of residence was calculated to cause injury to Carman in Florida. Lovelady cannot now claim surprise at being haled into court here." *Id.* at *5 (citation omitted).

21

relief.  *See S.E.C. v. Carillo*, 115 F.3d 1540, 1547 (11th Cir. 1997).

As to Defendants' burden of litigating in Florida, while Defendants do not have an office or substantial presence in Florida, "the modern methods of transportation have and communication have ameliorated this sort of burden."  *Id.*  Plaintiff is a Florida corporation. Florida therefore has a strong interest in adjudicating the suit and affording its residents a forum to obtain relief from the intentional misconduct of nonresidents causing injury in Florida.  *Licciardello*, 2008 WL 4531668 at *6.  Moreover, a Florida plaintiff injured by the intentional misconduct of a nonresident should not be required to travel to obtain a remedy. *See Licciardello,* 2008 WL 4531668 at *6 ("In this case, the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy. The Supreme Court in *Calder* made clear that '[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.' 465 U.S. at 1487, 104 S.Ct. 1401.").  Finally, Plaintiff has significant interest in obtaining relief for the copyright infringement.  Hence, the traditional notions of fair play and substantial justice are not offended by this court asserting jurisdiction over Defendants Grupo and Halabe.

### 3.    Personal Jurisdiction in the United States (Rule 4(k)(2))

If I had not found jurisdiction in Florida, I would have found jurisdiction in the United States under Fed.R.Civ.P. 4(k)(2).  Where a defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state, Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must "arise under federal law;" and, (2) the

exercise of jurisdiction must be "consistent with the Constitution and laws of the United States." *Consol. Dev. Corp. v. Sherritt*, 216 F.3d at 1291 (citing Fed.R.Civ.P. 4(k)(2).); s*ee Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999) ("This rule permits the exercise of personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the national as a whole, but is without sufficient contacts to satisfy the long-arm statute of any particular state.").[14]

As noted in my discussion of subject matter jurisdiction above, Plaintiff's claims arise under federal copyright laws and thus satisfy the first prong of the test. As to the second prong, due process under Rule 4(k)(2) requires that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Consol. Dev. Corp. v. Sherritt*, 216 F.3d at 1291. The applicable forum under Rule 4(k)(2) is the United States, not Florida. *Id.*

a.    Specific Jurisdiction

As with my analysis of minimum contacts to establish specific jurisdiction in Florida,

---

[14]As Defendants correctly note, the Eleventh Circuit has not addressed the issue of which party bears the burden of establishing that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state. The Seventh Circuit places the burden on the defendant to defeat the use of 4(k)(2): "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit would proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). The First Circuit, on the other hand, has set forth a more complex burden shifting whereby the Plaintiff first must make a prima facie showing, and then the burden of production is on the defendant. *U.S. v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 4-421 (1st Cir. 1990). Given that I have found jurisdiction in Florida under Florida's long-arm statute, and I evaluate Rule 4(k)(2) only as an alternative basis, I decline to address at this time who bears the burden of showing no alternate forum in this circuit.

I consider first in my analysis of jurisdiction in the United States the Defendants' Coco Bongo website contacts with the United States.  First, the website is the site of the alleged copyright infringement and is therefore related to the cause of action.  Second, Plaintiffs allege that Defendants have targeted the website to residents of the United States.  The website has an English language version, displays pictures of the United States flag, and depicts American celebrities., such as Elvis Presley, Madonna, Beyonce, and Britney Spears.  (Complaint, DE 1, ¶ 20, Exhibits B-H).  Defendants have not disputed these allegations, and I conclude that Defendants, by targeting the website, have purposely availed themselves of the United States.

Applying the "website plus" test I articulated above, Defendants' additional contacts with the United States reinforce my conclusion that Defendants have availed themselves of the forum.  Plaintiff alleges that Defendants significantly target tourists from the United States in their promotional efforts.  (Complaint, DE 1, ¶ 18).  Defendants advertise and promote their nightclub through United States travel agents and tour operators who sell admission passes and distribute discount coupons to tourists from the United States.  *Id.* at ¶ 21.  Defendants also promote and advertise the nightclub in the United States by distributing advertisements and promotional materials through U.S. magazines and travel publications, and on U.S. companies' websites and college campuses.  *Id.* at ¶ 22.  Finally, Defendants attend trade shows many times through the year throughout the United States.  *Id.* at ¶ 23.   All of these contacts with the United States serve the same purpose as Defendants' website, namely to attract customers to the Coco Bongo nightclub.

24

Apparently, Defendants were successful, as Plaintiffs allege that more than half of Coco Bongo's customers are tourists from the United States. *Id.* at ¶ 18. Accordingly, I conclude that Defendants purposely availed themselves of the United States. *Cf. See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed.Appx. 518, 522-23 (6th Cir. 2006) (finding no general jurisdiction under Rule 4(k)(2) where defendant presented evidence that sales occurred solely outside the United States, United States residents accidently visited defendant's website, and defendant attended only one United States trade show); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006) (finding no general jurisdiction under Florida Long Arm Statute where defendant had no physical presence in Florida, did not solicit Florida clients, and derived less than one percent of its revenues from matters in Florida).

Finally, Defendants could reasonably be expected to be haled into court in the United States because Defendants deliberately and intentionally targeted the website to United States residents and otherwise advertised and promoted the Coco Bongo nightclub in the United States. I therefore determine that the forum of the United States has specific jurisdiction over Defendants pursuant to Rule 4(k)(2).

b.   Fair Play and Substantial Justice

As the last step, I analyze whether the exercise of personal jurisdiction in the United States comports with "traditional notions of fair play and substantial justice." The factors under consideration include the burden on the Defendants, the interests of the plaintiff in obtaining relief, and the interests of the forum. As to the burden on Defendants of defending suit in the United States, "modern methods of transportation have and

communication have ameliorated this sort of burden." *Carillo*, 115 F.3d at 1547.  Plaintiff

has an interest in obtaining relief for copyright infringement, and the United States certainly

has an interest in upholding federal copyright laws, especially when a forum citizen has

been harmed by the intentional tort of a non-resident defendants.  *See Licciardello*, 2008

WL 4531668 at *6.   Requiring Defendants to litigate in the United States does not violate

due process, and Rule 4(k)(2) serves as an alternate basis for jurisdiction over Defendants

Halabe and Grupo.

       C.     Failure to State a Claim Upon Which Relief Can Be Granted

     Defendants raised two grounds for dismissal under Rule 12(b)(6) in their Motion.

First, Defendants argued that Plaintiff failed to establish a claim for copyright infringement,

and, second, that Plaintiff failed to state a claim against each defendant independently.

I address each argument in turn.

       1.     Failure to Establish a Claim for Copyright Infringement

     Defendants argued in their Motion that Plaintiff failed to state a claim for

infringement of a sound recording or musical composition because Plaintiff attached a

copyright registration for a musical composition, but pled infringement of a sound

recording.  In their Reply, Defendants noted that Plaintiff did allege infringement of the

musical composition, and Defendants modified the request to one for dismissal of any

infringement of copyright in the sound recording.  As Plaintiff argues in its Response,

Plaintiff seeks redress only for infringement of a copyright for a musical composition.  I

cannot dismiss a claim for infringement in the sound recording when Plaintiff does not

request redress for unauthorized copying of the sound recording.   I therefore deny

Defendants' request to dismiss as to any claim for infringement in the sound recording.

2.   <u>Failure to State a Claim Against Each Defendant Independently</u>

Defendants next argue that Plaintiff has failed to state a claim against each

defendant independently.  The Eleventh Circuit stated in a copyright infringement case, "An

individual, including a corporate officer, who has the ability to supervise infringing activity

and has a financial interest in that activity, or who personally participates in that activity is

personally liable for the infringement."  *Southern Bell Tel & Tel. V. Assoc. Telephone Dir.*,

756 F.2d 801, 811 (1985).  Plaintiff alleges that the Coco Bongo website is "maintained by

Noble and Halabe, who both have control over the content placed on the website.  Noble

has the ultimate authority to approve all advertisements and content on the website."

(Complaint, DE 1, ¶ 19).   Defendants argue that Plaintiff has failed to plead liability of the

individual defendants Halabe and Noble because the allegation that Halabe has ultimate

authority over the website negates liability of Noble, and because Plaintiff has not alleged

that Halabe has any financial interest in the infringing activity.

At this stage in the proceeding, I must not only accept all of the factual allegations

in the Complaint as true, but I must also evaluate all inferences derived from those facts in

the light most favorable to the plaintiff.  *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.

2003).  Plaintiff has alleged that both Halabe and Noble have control over the content on the

website; *Southern Bell* does not require ultimate authority, nor does it require only one

person to have authority.  Plaintiff has also alleged that both Halabe and Noble are

27

employees of Grupo, the owner of the Coco Bongo nightclub.  Evaluating all inferences in the light most favorable to the Plaintiff, I infer at this juncture that Halabe and Noble have some financial interest in the Coco Bongo nightclub and, correspondingly, the website.

Moreover, under Fed.R.Civ.P. 8, Plaintiff is required only to plead a short and plain statement of the facts which entitle him to relief, which Plaintiff has done.  At this stage in the proceeding, I find that Plaintiff has adequately pled that it owns a valid copyright and that Defendants have infringed such copyright.  Defendants' arguments would be properly considered by the court in a motion for summary judgment, *see Lifetime Homes, Inc. v. Walker Homes, Inc.*, 2006 WL 889986, at *3 (M.D.Fla. April 6, 2006) (holding in copyright infringement action that plaintiff has adequately pled copyright infringement and arguments regarding individual liability would be properly considered at summary judgment stage), and Defendant's motion to dismiss on these grounds is consequently denied.

D.    Motion to Strike

_____Rule 12(f) of the Federal Rules of Civil Procedure provides a procedure in civil cases whereby immaterial, impertinent or scandalous matter may be stricken from the pleadings. *In re Smith*, 656 F.2d 1101, 1104 (5th Cir. 1981).[15]  "[I]t is well established that the action of striking a pleading should be sparingly used by the courts. . . . It is a drastic remedy to be resorted to only when required for the purposes of justice. . . . The motion to strike should be granted only when the pleading to be stricken has no possible relation to the

---

[15]All cases decided by the United States Court of Appeals for the Fifth Circuit before September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

28

controversy.'" *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

Defendants move to strike Plaintiff's allegations (contained in paragraphs 15 through 17, and 20 of the Complaint) of Defendants' allegedly unauthorized use of celebrity names and likenesses, trademarks, and copyrights at the Coco Bongo nightclub and on the Coco Bongo website, as such allegations do not relate in a meaningful way to Plaintiff's claim. Plaintiffs claim these statements are relevant to Plaintiff's copyright infringement claim, as they evidence or corroborate Defendants' promotional efforts for the nightclub.

I conclude that Plaintiff's statements have a possible relation to the controversy, and I therefore deny Defendants' Motion to Strike.   Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss and Motion to Strike [DE 17] is DENIED.

DONE AND ORDERED in Chambers in Miami, Florida this 24th day of October, 2008.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
All counsel of record

29